HEARD APRIL TERM, 1873.

## WALLER vs. CRESSWELL.

Has the Probate Court jurisdiction to compel a guardian to account for the estate of his ward where the proceedings are commenced by the latter after arriving at age? *Quare.*

In such a case, where no objection for the want of jurisdiction was interposed by the guardian, the Supreme Court did not feel bound to interpose it, of its own motion, on the hearing of an appeal by the ward to that Court.

A guardian appointed in this State who received during the war, from an administrator in Alabama, Confederate currency on account of his ward's share of his father's estate in that State, is liable to account only for the value of the currency received in lawful money.

An investment by a guardian of his ward's Confederate currency in Confederate bonds, bearing interest, was no breach of trust.

If a guardian is liable for investing his ward's Confederate currency in Confederate bonds, he is only liable for the value, in lawful money, of the currency invested.

BEFORE ORR, J., AT ABBEVILLE, OCTOBER TERM, 1870.

The proceedings in this case were commenced by a petition for account, filed on the 8th day of June, 1869, in the Court of Probate of Abbeville County, by Cadmus G. Waller, petitioner, against James Cresswell, C. W. Sproull and William N. Blake, defendants.

In May, 1862, Cresswell was appointed by the Court of Equity for Abbeville District, guardian of the petitioner, and gave bond, Sproull and Blake being his sureties.

The father of the petitioner was, in his lifetime, a citizen of South Carolina. He died in August, 1859, leaving a considerable estate in Alabama, which his administrators in that State sold the same year. The sales were on credit, and bonds with sureties taken for the purchase money.

In the years 1862–3 Cresswell received from the administrators in Alabama, on account of his ward's share of the estate, several sums in Confederate currency, amounting in the aggregate to $4,-851.68, and invested $2,000 thereof in seven per cent. notes of the Confederate States. On the 28th day of February, 1864, he received from the same administrators another sum of $4,304, also in Confederate currency, and on March 28th of the same year he invested $3,000 in a four per cent. certificate of the Confederate States.

The Judge of Probate decided that Cresswell acted in good faith, as well in receiving the Confederate currency as in making the investments for his ward. He accordingly allowed him credit for the sums invested, and after allowing further credits for payments and

commissions, found a balance due by him, on 1st January, 1864, of $588.49, which, reduced to its value in national currency, amounted to $42.34, for which sum, with interest from 1st January, 1864, he gave a decree against defendants.

The petitioner appealed to the Circuit Court on grounds substantially the same as those hereinafter mentioned as taken on his appeal to this Court, except that by one ground he complained of the allowance of the investment of $3,000.

By order of the Circuit Court certain questions were submitted as issues to a jury, who found, in reply thereto, that the estate of the petitioner was not called in by the defendant, Cresswell, and that the investments were made in good faith, and with the funds of the ward.

His Honor the presiding Judge sustained the decree of the Probate Court, except as to the investment of $3,000. That investment he held to be unlawful, and he gave a decree for the petitioner for $260.87, the value, in lawful money, of the $3,000 with interest thereon from the 28th March, 1864, and also for the sum decreed by the Probate Court, and for costs.

The petitioner appealed to this Court on the grounds:

1. Because the estate of the appellant, consisting of good and safe securities, bearing interest at the rate of eight per centum per annum in lawful and sound currency in the State of Alabama, having been unnecessarily called in by his guardian, James Cresswell, one of the respondents, and received by him in the unlawful and depreciated Treasury notes of the Confederate States, was a breach of trust, and the said James Cresswell should have been charged in sound and lawful currency with the sum of money so received by him for his ward, the appellant.

2. Because the investment of two thousand dollars, alleged to have been made by the said James Cresswell for his ward, the appellant, in seven per cent. bonds of the Confederate States, was a breach of trust, and should have been disallowed in stating the account of the said James Cresswell, as guardian of the appellant.

3. Because, if it were not a breach of trust for the respondent, James Cresswell, to receive his ward's estate in the depreciated Treasury notes of the Confederate States, yet the receipt on the 26th of February, 1864, of four thousand three hundred and four dollars, or other sums, only one month before the Act of Congress of the

Confederate States requiring the Treasury notes of that government, on the first of April, 1864, to be funded in four per cent. bonds, or to be reduced in value one-third, was to go into operation, was a breach of trust by the said guardian, and should have been so held, and the guardian charged with that sum in lawful and good money.

4. Because the investment of three thousand dollars by the guardian, on the 28th of March, 1864, having been disallowed, the guardian should have been charged with that sum in lawful and sound money, instead of being charged with the value in sound and good money of three thousand dollars of Confederate Treasury notes.

5. Because the amount expended by the guardian in the depreciated currency of the Confederate States was allowed in his accounts, without any abatement or reduction.

It appeared by the pleadings and the evidence that the petitioner was of full age when the petition was filed, but no objection to the jurisdiction of the Probate Court was made by the defendants on that ground at any stage of the proceedings.

*Burt*, for appellant.

*Perrin & Cothran*, contra.

The Court ordered the following question to be argued: " Can a ward who has attained the age of twenty-one years maintain, in the Probate Court, an action against his guardian for an account of his guardianship?" And after hearing argument upon this question and the other points involved in the case,

The opinion of the Court was delivered by

MOSES, C. J. We do not propose in this case to give any construction to the words, in the twentieth Section of the fourth Article of the State Constitution, " in business appertaining to minors," which might, on the one hand, limit the jurisdiction of the said Probate Court to matters cognizable by it only while the party is under age, or, on the other, to extend it to rights and obligations arising during his minority, and sought to be enforced in his favor after he had attained his majority. Although the proceeding here was commenced by the appellant when he was *sui juris*, no exception was made to it on that ground, either in the Probate

Court, where it originated, the Circuit Court, to which it was taken on appeal, nor in this Court, where it thence came. The objection, for the first time, was intimated by the Court here, and the counsel for the respondents, so far from availing himself of any advantage to be derived from it, did not desire its interposition. While we have no hesitation in saying that where there appears to be a clear want of jurisdiction, the Court is not prevented from so declaring, because the exception has not been made by the party against whom its exercise is to operate, but where it is doubtful, and the exception is not submitted until a long protracted litigation is about drawing to a close, the Court, as was said in *Wilson, et al,* vs. *Cheshire,* 1 McC. Ch., 242, " will not be astute to discover such an objection at the very moment when the rights of the parties are about to be fully determined on and put at rest forever." To the same effect said Chancellor Kent, in *Underhill* vs. *Van Cortland,* 2 Johns. Ch., 369, referring to the opinion of the Court of Errors, in *Ludlow* vs. *Simond,* 2 Caine's Cases in Error, 40, 56.

When a Court takes cognizance of cases in which the very nature of its organization prevents it from entertaining the issues made between the parties, and its means of administration prevent an enforcement of any judgment it may therein pronounce, the objection to its jurisdiction may be made at any time; but where, having jurisdiction over the general subject, limited only by some qualification, as, possibly, here, the age of the party complaining, in the language of Chancellor Harper in *Miller* vs. *Furse,* Bail. Eq., 191, " there can be no hardship in requiring the objection to be made, in the first instance, before the delay and expense of preparing the case for trial."

There is another consideration which should influence the Court to entertain the appeal in the case before it, without regard to its intimation as to the want of jurisdiction by the Probate Court. The motion here is to modify and reform the judgment of the Circuit Court, which, it is conceded, (notwithstanding what may have been the concurrent authority of the Probate Court,) had original jurisdiction over the parties and the subject-matter. The sixty-fifth Section of the Code, Gen. Stat., p. 557, provides, " that the final decision and judgment in cases appealed shall be certified to the Probate Court by the Circuit Court, or Supreme Court, as the case may be, and the same proceedings shall be had in the Probate Court as though such decision had been made in such Court." It only

remains for it to carry out such final judgment without any further action, determining in any way any question already made before it. The final judgment of the Circuit or Supreme Court is substituted as that of the Probate Court, and must be accordingly enforced.

In the case before us the guardian cannot be treated as a trustee who has caused loss to his *cestui que trust*, by calling in, without adequate reason, good and safe obligations, and accepting for their payment a depreciated currency. The jury, by their verdict on the issues submitted, has found that the estate of the appellant was not called in by the respondent, his guardian, and therefore the Confederate Treasury notes are only to be considered as received by him as a payment on account of the interest of the ward, as a distributee of his deceased father.

The administrators of the father represented his estate. They held their letters under the authority and by virtue of the laws of Alabama, and the respondent, as guardian, had no direct control or supervision over it. The bonds which were taken on the sale were not secured by any mortgage of real estate, and the administrators accepted Confederate money for their payment. The cases, therefore, in which we have held that a trustee is responsible, if he received such currency when the debt was secured by a lien of that character, have no application. Nor does the doctrine which this Court has maintained, making him responsible if he exchanges a security for one which is inferior in value, or invests in direct opposition to the terms of the trust, affect the case of the guardian here. He was bound either to receive the portion of the ward's estate tendered him as the only prevailing circulating medium of the country, or, by declining, leave the administrators to be pursued by the ward in the Courts of the State in which they resided. His appointment as guardian in this State conferred on him no right to bring the administrators to account for the interest of the appellant in the estate which they represented. He had no alternative; he was without remedy by which to make the obligors of the bonds liable. They had satisfied them by payment to the administrators in a medium which, by their consent, had discharged them. No evidence was offered as to the character of the administration bond, or the solvency of the principal and his sureties. They were all in another jurisdiction. Under these circumstances, is the guardian to be held accountable for receiving from the ad-

ministrators, all being citizens of the same *de facto* government, the currency which they had accepted in discharge of the bonds, and which was the only one prevailing, both in Alabama and this State? It had some value; it not only afforded the means by which the ordinary articles necessary for support could be acquired, but it was a medium by which commodities could be exchanged, and even property bought, although at highly augmented prices. A civil war was raging, fierce and devastating, when and how terminating human foresight could with no approach to certainty determine. Even if successful to the Confederacy which was waging it, years of deprivation, toil and industry must probably have been endured to repair the broken fortunes of its people. Can we, then, say that the " act in question was an incautious and imprudent one?"

The receipt of the money at the time referred to in the third ground of appeal depends upon the same principle and views which have been expressed in regard to the acceptance of Confederate Treasury notes from the administrators of the estate of the father. If it was not a breach of trust on the part of the guardian to receive such notes on account of the share of the ward in the hands of the administrators, can it be made so because he received this particular sum when he had the opportunity of investing it in an interest-bearing bond of the same Government which had issued the non-bearing interest notes? And this applies, too, to so much of the appeal as seeks to hold the guardian liable because of his investment in such securities. Was loss more likely to follow from the conversion of the notes into bonds of the Government which had issued both? If not, the act of the guardian did not reduce the funds of the ward to a worse condition than they were in when he held them in the shape of Confederate Treasury notes. The good faith of the guardian is established by the finding of the jury, and as the transaction was in no way calculated to diminish the value of the funds of the ward in his hands, it does not constitute, in itself, such a breach of trust as should render him liable for the loss.

The fourth ground of appeal insists that the Circuit Court, holding the investment of the $3,000 by a deposit with the agent of the Treasury of the Confederate States inoperative, should have disallowed it entirely, instead of allowing it to stand as a charge against the ward to the extent of its value in national currency. This strikes us as a misconception of the principle in *Head et. al.* vs. *Tal-*

*ley, Administrator,* (Sup. Ct. U. S., 3 American L. Times, 155,) which is brought into requisition to sustain it. There the Court decided "that while it is true that the investment of trust funds in a loan sanctioned by the proper Confederate Courts was not an imprudent act, it must be held to be an investment of such a nature that it cannot, under any circumstances, be regarded by a Court of the United States as excusing an account." To give to the authority its fullest scope, no more can be asked than to require the guardian to account for the currency which, in the language of Chief Justice Chase, who delivered the opinion of the Court, "was an actual advance of money to the Confederacy itself—there was an investment of trust funds entirely voluntary on the part of the administrator in a loan to the Confederacy, to aid in its efforts to dismember the Union and overthrow the National Government." The guardian cannot be responsible for more than he so advanced, for the extent of his aid, through the act, must be measured by the value of the consideration for which he acquired the bond. If the investment is void in itself, all that the party, for whose use it was intended, can claim, is the amount which the guardian paid for it, and this is the sum which must be refunded. To give him the whole amount of the bond in national currency would, in fact, make the trustee liable for the receipt of the Confederate Treasury notes, against the opinion of the Court that he committed no breach of trust in accepting them.

The motion is dismissed.

*Wright,* A. J., and *Willard,* A. J., concurred.